IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ELMER STEPHEN WEREB and BETTY JEAN WEREB, | ) ) ) | CIVIL NO. 09-00198 JMS-RLP |
| Plaintiffs, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MAUI COUNTY'S MOTION FOR |
| vs. | ) ) | RECONSIDERATION |
| MAUI COUNTY, a political subdivision of the State of Hawaii, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MAUI COUNTY'S MOTION FOR RECONSIDERATION

## I. INTRODUCTION

Plaintiffs Elmer and Betty Wereb ("Plaintiffs") brought this suit under

42 U.S.C. § 1983 after their son, Dennis Wereb ("Wereb"), died while in

Defendant Maui County's (the "County") custody at the Lahaina, Maui, Police

Station.  On July 28, 2010, the court issued its Order (1) Granting in Part and

Denying in Part Defendants Hankins, Burgess, Lee, Gomes, Amano, Alvarez,

Mawae, and Kia's Motion for Summary Judgment, and (2) Denying Defendant

Maui County's Motion for Summary Judgment (the "July 28, 2010 Order").  *See*

Doc. No. 114, July 28, 2010 Order (published as *Wereb v. Maui County*, 727 F.

Supp. 2d 898 (D. Haw. 2010)).  The County now moves under Local Rule 60.1(b)

for reconsideration of relevant parts of the July 28, 2010 Order, given the

intervening Opinion in *Connick v. Thompson*, 131 S. Ct. 1350 (2011).

The July 28, 2010 Order addressed all aspects of Plaintiffs' action,

including individual-capacity claims against eight different County employees,

defenses of qualified immunity as to some officials, potential supervisorial

liability, state law claims, as well as potential municipal liability against the

County under *Monell v. New York City Department of Social Services*, 436 U.S.

658 (1978).  *Connick* and the present Motion now focus the court specifically on

municipal liability and the question whether the County could have been

"deliberately indifferent" to Wereb's constitutional rights.  More precisely, the

Motion is directed at the narrow issue of potential municipal liability for failure to

train, where only a "single incident" of a constitutional violation is allowed.  The

Motion requires the court to scrutinize Plaintiffs' theory of municipal liability, and

to re-examine and refine the legal analysis in light of *Connick*.

After carefully studying the contours of the Supreme Court's latest

explanation of the "single-incident" theory of municipal liability, the court

GRANTS the County's Motion IN PART, and thus GRANTS summary judgment

IN PART in favor of the County on an aspect of Plaintiffs' § 1983 claim.

## II.  **BACKGROUND**

The relevant portion of the July 28, 2010 Order denied the County's

Motion for Summary Judgment by addressing potential municipal liability against

the County under *Monell*, and determining that genuine issues of material fact

remain for trial against the County.[1]

The July 28, 2010 Order extensively sets forth the circumstances that

led to Wereb's death and Plaintiffs' corresponding theory or theories of liability

against the County based on inadequate training of its Public Safety Aides

("PSA").  The court need not repeat the details here, as the County largely seeks

reconsideration based on legal, not factual, grounds.[2]  Accordingly, this Order is

restricted solely to the question of whether an intervening change in law requires

---

[1] Plaintiffs' remaining claims against individual Defendants were subsequently
dismissed by stipulation.  *See* Doc. Nos. 131, 163.  The suit is proceeding only against the
County for a civil rights violation under 42 U.S.C. § 1983 and for wrongful death under Hawaii
Revised Statutes § 663-3.

[2] The County proffers a Declaration of its current (and former Deputy) Police Chief Gary
Yabuta, to provide statistics indicating that Wereb was the only person who died or suffered
injury from the absence of medical treatment at the Lahaina Police Station from March 1993 to
the present.  *See* Doc. No. 189-1, Yabuta Decl. ¶¶ 3-4.  (The Declaration refers to 1993 and
1983, but  based on references during the County's oral argument, it is apparent that the proper
year is 1993.)  The County does not argue that this Declaration by itself is newly discovered
evidence sufficient to grant reconsideration.  Rather, this evidence is offered in conjunction with
the County's arguments as to the meaning of *Connick v. Thompson*, 131 S. Ct. 1350 (2011), and
whether the Supreme Court modified any relevant principles since the July 28, 2010 Order such
that summary judgment should now be granted in favor of the County.  With that purpose, the
court OVERRULES Plaintiffs' Objections (Doc. No. 188) to Yabuta's Declaration (now that it
has been properly sworn, Doc. No. 189).

the court to reconsider its July 28, 2010 Order as to potential County liability.

The court denied the County's Motion for Summary Judgment because, construing factual inferences in favor of Plaintiffs, a reasonable factfinder could conclude that the County failed to train its employees who were responsible for monitoring pretrial detainees, and that such training was "deliberately indifferent" to their medical needs. *Wereb*, 727 F. Supp. 2d at 923. According to Plaintiffs' evidence, "Maui County's employees did not receive training on what to look for when monitoring detainees via video, . . . and did not receive training on how to determine if detainees were at risk for alcohol withdrawal[.]" *Id.* at 922 (citations to record omitted). The court explained:

> A reasonable factfinder could find that the failure to provide detainees with the right to medical care was *an obvious consequence* of Maui County's employees' failure to closely monitor detainees or view them in person. The fact that Wereb lay motionless for approximately twenty-seven hours before he was found dead supports the conclusion that detainees were not monitored with a level of care required to notice even the most basic of medical needs. Further, given the known drawbacks of monitoring by video -- including the inability to spot signs of medical distress like sweating, shaking, or changes in skin color -- *it should have been obvious* to Maui County that monitoring detainees exclusively by video would deprive county employees of an accurate understanding of detainees' medical needs.

*Id.* (emphases added). The court further reasoned that the County had knowledge

4

of specific needs of detainees:

> The danger of Maui County's failure to train its
> employees in monitoring was further exacerbated by the
> fact the detainees in Maui are particularly likely to
> require medical care.  [Maui Police Department's
> ("MPD")] Chief of Police, as well as many MPD
> employees, are aware that a large population of homeless
> alcoholics live in Maui and frequent the Lahaina Police
> Station. . . . .  As a result, *it should have been obvious* to
> Maui County that its employees would likely encounter
> detainees experiencing alcohol withdrawal, which can be
> accompanied by serious and life-threatening side effects.

*Id.* at 923 (emphasis added and internal record citations omitted).

In so reasoning, the court was applying the principles of "deliberate

indifference" that were explained earlier in the July 28, 2010 Order, in part as

follows:

> [M]unicipal liability may be imposed when "the need for
> more or different training is so obvious, and the
> inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the city can
> reasonably be said to have been deliberately indifferent
> to the need."  *Canton* [*v. Harris*], 489 U.S. [378, 390
> (1989)]; *see also Bd. of County Comm'rs* [*of Bryan
> Cnty.*] *v. Brown*, 520 U.S. 397, 407-09 (1997)
> (explaining that deliberate indifference may be shown
> through a "pattern of tortious conduct by inadequately
> trained employees" or where "a violation of federal rights
> may be a highly predictable consequence of a failure to
> equip law enforcement officers with specific tools to
> handle recurring situations").

*Wereb*, 727 F. Supp. 2d at 922.  Although the court did not specifically state it as

such, the court was applying the single-incident theory recognized in *Canton* as a method of proving "deliberate indifference" in a municipality's failure to train employees.  Under *Canton* -- even in the absence of a prior pattern of violations -- in certain limited situations a need for training can be "so obvious," and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."  489 U.S. at 390.  *Canton* exemplified such "obviousness" by noting:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.  The city has armed its officers with firearms, in part to allow them to accomplish this task.  Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id.* at 390 n.10.  This was the theory Plaintiffs advocated in opposing the County's prior Motion for Summary Judgment, *see* Doc. No. 97, Pls.' Resp. to County's Mot. for Summ. J. at 22-24, and remains their primary theory of municipal liability.[3]

---

[3] Plaintiffs' state law claim remains against the County regardless of the court's decision on this Motion.

On October 6, 2010, the Supreme Court heard oral argument in
*Connick*, where the question presented was originally stated as "does imposing
failure-to-train liability on a district attorney's office for a single *Brady* [*v.
Maryland*, 373 U.S. 83 (1963),] violation contravene the rigorous culpability and
causation standards of *Canton* and *Bryan County* [*v. Brown*, 520 U.S. 397
(1997)]?"  *See Connick v. Thompson*, 130 S. Ct. 1880 (2010) (mem.) (granting
certiorari "limited to Question 1 presented by the petition"); *Connick v. Thompson*,
2009 WL 3776259, at *i (Nov. 6, 2009) (Petition for Writ of Certiorari setting
forth questions presented).  That is, the Supreme Court was to address important
aspects of the very theory that this court applied in part in its July 28, 2010 Order
-- this case centers on issues of "single incident" municipal liability as stated in
*Canton*, and the Supreme Court was considering "the rigorous culpability and
causation standards of *Canton* and *Bryan County*."  The court thus found it
appropriate to wait for an Opinion in *Connick* before proceeding with a trial that
was then-scheduled to take place in the time frame of *Connick*'s anticipated
release.  *See* Doc. No. 145, Mins. of Mar. 10, 2011 Conf.  The court subsequently
re-set the trial date to December 6, 2011.  Doc. No. 149.

On March 29, 2011, the Supreme Court issued *Connick*, holding that a
district attorney's office may not be held liable under § 1983 for failure to train its

prosecutors based upon a single *Brady* violation.  130 S. Ct. at 1356.  *Connick*

discussed and reiterated certain principles, as explained below.  Accordingly, on

July 12, 2011, the County filed its Motion for Reconsideration, asking this court to

review relevant parts of its July 28, 2010 Order.  Doc. No. 171.  Plaintiffs filed a

Response on September 12, 2011, Doc. No. 188, and the County filed its Reply on

September 19, 2011, Doc. No. 192.  The court heard the Motion on October 3,

2011.  The court received Supplemental Memoranda on October 31, 2011 and

November 3, 2011.  Doc. Nos. 200, 201.

## III.  STANDARD OF REVIEW

A "motion for reconsideration must accomplish two goals.  First, a

motion for reconsideration must demonstrate reasons why the court should

reconsider its prior decision.  Second, a motion for reconsideration must set forth

facts or law of a strongly convincing nature to induce the court to reverse its prior

decision."  *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw.

1996).

Under Local Rule 60.1, only three grounds justify reconsideration:

(1) an intervening change in controlling law; (2) the discovery of new evidence not

previously available; and (3) the need to correct clear or manifest error in law or

fact in order to prevent manifest injustice.[4]  *See, e.g.*, *White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006)).  "Mere disagreement with a previous order is an insufficient basis for reconsideration."  *Id.*  Furthermore, reconsideration may not be based on evidence and legal arguments that a movant could have presented at the time of the challenged decision.  *See Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  *White*, 424 F. Supp. 2d at 1274 (citing *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

## IV.  DISCUSSION

The court sets forth the Supreme Court's latest explanation of relevant principles in *Connick*, and analyzes why *Connick* requires the court, in limited part, to reconsider its July 28, 2010 Order.

---

[4]  Local Rule 60.1 provides:

Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
    (a) Discovery of new material facts not previously available;
    (b) Intervening change in law;
    (c) Manifest error of law or fact.

A.      *Connick*'s Explanation of the "Single-incident" Theory of Municipal Liability

*Connick* began with the fundamental principle that municipalities or local governments cannot be vicariously liable under § 1983, but instead are "responsible only for 'their *own* illegal acts.'"   131 S. Ct. at 1359 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  A § 1983 plaintiff must therefore prove that an "official municipal policy" caused a plaintiff's injury.  *Id.* (citing *Monell*, 436 U.S. at 691).

Only in "limited circumstances" can such an "official municipal policy" arise from "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights."  *Id.*  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)).  Thus, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'"  *Id.* (quoting *Canton*, 489 U.S. at 388) (brackets omitted).

Proving "deliberate indifference" is not easy.[5]  *Connick* reiterated that

_____

[5]  As recognized in the July 28, 2010 Order, "'[d]eliberate indifference' in *Canton*'s municipal liability context has a distinct meaning from the subjective deliberate indifference

(continued...)

"'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 1360 (quoting *Bryan Cnty.*, 520 U.S. at 410).  Disregarding "a known or obvious consequence" means "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[.]"  *Id.*  If such notice exists, then a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program."  *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407).

        In turn, to prove "actual or constructive notice" of a constitutionally-significant gap in training, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees."  *Id.*  But *Connick* also reaffirmed the alternative "single-incident" theory of liability:  a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal culpability."  *Id.* at 1361.  *Connick* reemphasized that this single-incident theory is possible only "in a narrow range of circumstances."  *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).  The situation is "rare" -- "the unconstitutional consequences of failing to train" must be "patently

---

        [5](...continued)
standard set forth for individual liability[.]"  *Wereb v. Maui County*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010) (citations omitted).  "In the municipal context, deliberate indifference is an *objective* standard, not a *subjective* one."  *Id.*

obvious" before a municipality can be liable under § 1983 without proof of a pre-existing pattern of violations. *Id.* And a violation of a protected right must be a "highly predictable consequence" of a decision not to train. *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409). Emphasizing its difficulty of proof, *Connick* nevertheless left open (as a general matter) the exceptional possibility that a failure in a municipality's training program could be so obviously deficient that it could lead to liability for damages resulting from a single violation. *Id.*

Applying those principles, *Connick* rejected municipal liability on the case's facts, reasoning that the risk that a prosecutor would commit a serious *Brady* violation was not "obvious." Licensed attorneys "are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *Id.* The single-incident theory did not apply because "[i]n light of this regime of legal training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at 1363 (citing *Bryan Cnty.*, 520 F.3d at 409). "A licensed attorney making legal judgments, in his capacity as a prosecutor, about *Brady* material simply does not present the same 'highly predictable' constitutional danger as *Canton*'s untrained officer." *Id.* That is, *Connick* rejected the single-

incident theory in the *Brady*-violation context.

Another aspect of *Connick* gives renewed meaning to *Canton*'s original principles.  In distinguishing *Connick*'s facts from the example noted in *Canton*, the Supreme Court found "the nuance of the allegedly necessary training" to be significant.  *Id.*  The Supreme Court observed that "[t]he *Canton* hypothetical assumes that the armed police officers have *no knowledge at all* of the constitutional limits on the use of deadly force."  *Id.* (emphasis added). "Underl[ying] the *Canton* hypothetical" is an absence of training that leaves an officer with an "utter lack of an ability to cope with constitutional situations."  *Id.* A single-incident theory can arise in circumstances with "the *complete absence* of legal training that the Court imagined in *Canton*."  *Id.* (emphasis added). "[F]ailure-to-train liability is concerned with the substance of the training, not the particular instructional format."  *Id.*  Thus, deliberate indifference was lacking in *Connick* because the plaintiff's theory was necessarily "that prosecutors were not trained about particular *Brady* evidence or the specific scenario related to the violation in [his] case.  That sort of nuance [in training] simply cannot support an inference of deliberate indifference[.]"  *Id.*

*Connick* thus recognizes that *Canton*'s single incident theory does not allow inquiry into subtleties of training.  *Canton* should not be read to infer

deliberate indifference for failure to train after *any* violation, for "in virtually every instance" of a constitutional violation by a city employee "a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 1363. (quoting *Canton*, 489 U.S. at 392). *Connick* explained that

> showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability. "Proving that an injury or accident could have been avoided if an employee had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice.

*Id.* at 1363-64 (quoting *Canton*, 489 U.S. at 391 (internal editorial marks omitted)). Doing so would "provide plaintiffs or courts *carte blanche* to micromanage local governments[.]" *Id.* at 1363.

## B.     A Single-Incident Theory Can Still Apply to Deprivations of Serious Medical Needs

Much of the County's Motion argues that, after *Connick*, municipal liability for deliberate indifference based on a failure-to-train for serious medical needs requires a prior "pattern or practice" of violations. But nothing in *Connick* itself suggests that the single-incident theory cannot apply outside the deadly-force circumstances noted in *Canton*. Instead, the County relies on language in *Craig v. Floyd County*, 643 F.3d 1306 (11th Cir. 2011), that simply states "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability'

14

against a municipality." *Id.* at 1310 (quoting *Tuttle*, 471 U.S. at 823-24).  *Craig*,

however, is easily distinguishable -- it is not a failure-to-train case.  That is,

although *Craig* cites *Connick* for the established proposition that "[a] pattern of

similar constitutional violations . . . is 'ordinarily necessary,'" it nowhere purports

to read *Connick* as narrowing a single-incident, failure-to-train theory.  In fact,

courts continue to recognize a training deficiency as a possible basis for finding

deliberate indifference in a medical-needs context after *Connick*.  *See, e.g.*, *Jones v.

City of Cincinnati*, 2011 WL 4542672, at *26 (S.D. Ohio Sept. 28, 2011)

(applying, but rejecting, single-incident failure-to-train theory post-*Connick* where

plaintiff claimed that the City deprived plaintiff of adequate medical care by failing

to train on risks of "positional asphyxia"); *George v. Sonoma Cnty. Sheriff's Dept.*,

2011 WL 2975850, at *8 (N.D. Cal. July 22, 2011) (applying theory in medical

needs context); *Ramirez v. Ferguson*, 2011 WL 1157997, at *25-27 (W.D. Ark.

Mar. 29, 2011) (same).

## C.   Plaintiffs' Theories of Municipal Liability

In response to the court's request for Plaintiffs to articulate their

specific failure-to-train theory (or theories), Plaintiffs set forth two:  (1) "Maui

County failed to train its employees on how to monitor detainees to determine if

they needed medical care" (the "Monitoring Theory"), and (2) Maui County "failed

15

to train its employees on the risks, signs, and symptoms of alcohol withdrawal"

(the "Alcohol Withdrawal Theory").  Doc. No. 200, Pls.' Mem. at 1, 2.  The court

discusses each theory in turn, mindful that "[w]hether a local government has

displayed a policy of deliberate indifference to the constitutional rights of its

citizens is generally a jury question."  *Gibson v. Cnty. of Washoe*, 290 F.3d 1175,

1194-95 (9th Cir. 2002).[6]  That is, where the evidentiary record contains genuine

disputes of material fact, a jury is to decide whether a local government acted with

deliberate indifference.  *See Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir.

2011) ("The deliberate-indifference inquiry should go to the jury if any rational

factfinder could find [the] requisite mental state.").

### 1.    *Failure to Train Employees on How to Monitor Detainees to Determine If They Needed Medical Care*

The court concludes that Plaintiffs' Monitoring Theory remains

viable, even after *Connick*, and is supported by sufficient evidence in the record to

---

[6]  *See also Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190-91 (9th Cir. 2006) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194-95 (9th Cir. 2002)); *Berry v. Baca*, 379 F.3d 764, 769 (9th Cir. 2004) (same); *Davis v. Hall*, 375 F.3d 703, 719 (8th Cir. 2004) ("[W]hether the defendants' conduct constituted deliberate indifference is a classic issue for the fact finder.") (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)); *But cf. Connick*, 131 S. Ct. at 1366 ("The question presented for our review is whether a municipality is liable for a single *Brady* violation by one of its prosecutors, even though no pattern or practice of prior violations put the municipality on notice of a need for specific training that would have prevented it.  That question is a legal one[.]") (Scalia, J., concurring).

create a genuine issue of material fact for trial.[7]   Under this theory, County PSAs

had no knowledge or familiarity with their relevant constitutional duties.  They had

no basic medical training, and no prior background in law enforcement or in

prisons.[8]   Unlike *Connick*, this theory does not challenge subtleties in the County's

training program and thus does not implicate *Connick*'s concerns about

"micromanaging local governments."  *See, e.g.*, *George*, 2011 WL 2975850, at *8

("*Connick* is distinguishable because the lack of training about which Plaintiffs

complain here is not as specific as that rejected in *Connick*.").  Under Plaintiffs'

Monitoring Theory, the County gave its PSAs *no* training on how to monitor

detainees,[9] and *no* training on how to monitor for deprivation of "serious medical

needs."  *See Connick*, 131 S. Ct. at 1363 (reiterating that a single-incident theory

can arise in circumstances with "the complete absence of legal training that the

Court imagined in *Canton*").  Plaintiffs challenge the "substance" of the training,

---

[7]  *See, e.g.*, Doc. No. 99-4, Lee Dep. at 29:4-7; Doc. No. 99-6, Amano Dep. at 14:12-14; Doc. No. 99-7, Burgess Dep. at 29:13-14, 18-21, at 61:23-62:2, at 106:8; Doc. No. 99-8 at 12, Gomes Dep. at 23.

[8]  *See, e.g.*, Doc. No. 99-5, Alvarez Dep. at 9; Doc. No. 99-8, Gomes Dep. at 7.

[9]  Although there is some evidence that Maui County "trained" PSAs by giving them the County's written policy, *see, e.g.*, Doc. No. 99-5, Alvarez Dep. at 14:23, "a jury could find that merely distributing a manual, and nothing more, is the functional equivalent of no training at all[.]"  *Meogrossi v. Aubrey*, 2011 WL 1235063, at *13 (W.D. Ky. Mar. 31, 2011).  The court previously determined that, construing the evidence in favor of Plaintiffs, a reasonable factfinder could find that the County's PSAs were not trained at all on Maui Police Department's written monitoring policy.  *Wereb*, 727 F. Supp. 2d at 922.

17

not the "format." *Id.* As argued by Plaintiffs, the result of this failure to train led

to a practice -- arguably contrary to the County's written policy in G.O. 408.6 (*see*

Doc. No. 99-12, Heipt Decl. Ex. J, at 10-11) -- of not conducting any in-person

physical checks of detainees, and relying on a video monitoring system that was

inadequate to detect signs and symptoms of medical distress.[10]   Viewing the

evidence in the light most favorable to Plaintiffs, the result of lack of training here

was PSAs with "the utter lack of an ability to cope with constitutional situations."

*Connick*, 131 S. Ct. at 1363.[11]

### 2.   Failure to Train on the Risks, Signs, and Symptoms of Alcohol Withdrawal

Plaintiffs' Alcohol Withdrawal Theory, however, runs afoul of

*Connick.*  Simply put, it is too specialized and narrow -- it could not have been

"patently obvious" that unconstitutional consequences would be a highly

predicable result of a failure to train specifically on alcohol withdrawal.  The

---

[10]   *See, e.g.*, Doc. No. 99-4, Lee Dep. at 25:20-24, 26:7-10, 46:6-21, Doc. No. 99-5, Alvarez Dep. at 29-30; Doc. No. 99-6, Amano Dep. at 19:17-20, 22:6-14, 67:16-23; Doc. No. 99-7, Burgess Dep. at 25:22-25, 33:9-13; Doc. No. 99-8, Gomes Dep. at 38:23-39:4.

[11]   As previously recognized, disputes of material fact also remain as to causation.  *See Wereb*, 727 F. Supp. 2d at 923-24.  That is, a question of fact exists as to whether the alleged training deficiency was the "moving force" that "actually caused" the constitutional deprivation. *Canton v. Harris*, 489 U.S. 378,  389, 391 (1989).  *See, e.g.*, Doc. No. 99-4, Pls.' Ex. B, Lee Dep. at 65:22-66:5; Doc. No. 99-8, Pls.' Ex. F, Gomes Dep. at 37:2-14; Doc. No. 99-20, Jarris Decl. Ex. 1, at 6; Doc. No. 99-22, Rosazza Decl. Ex. 1 at 6; Doc. No. 99-24, Spitz Decl. Ex. 1 at 5-6.

Alcohol Withdrawal Theory is not of the same character as exemplified in *Canton*'s hypothetical, and as reemphasized and distinguished in *Connick*. That apparently no prisoner at the Lahaina Police Station has suffered injury from alcohol withdrawal from 1993 until Wereb's death (assuming he died of withdrawal) suggests an unconstitutional result was not obvious. Doc. No. 172-1, Yabuta Decl. ¶ 5.

Post-*Connick* caselaw supports this conclusion. *See Jones*, 2011 WL 4542672, at *26 (rejecting claim that municipality could be liable under single-incident theory for failure to train officers in prevention of "positional asphyxia"); *Elix v. Synder*, 2011 WL 2746111, at *4-5 (W.D. Okla. June 21, 2011) ("Plaintiff's focus on the content of the training would not create a triable issue of fact" where challenge was on City's failure to train on apprehending a suspect fleeing on foot.).

Allowing Plaintiffs' Alcohol Withdrawal Theory (as a stand alone theory of single-incident deliberate indifference) to be presented to a jury would raise the potential of requiring municipalities to train and screen for virtually any medical situation that might arise -- diabetes, drug withdrawal, alcohol withdrawal, pneumonia, schizophrenia, hypertension, positional asphyxia, excited delirium syndrome, agorophobia (the list might not end) -- and face potential liability for any gap in training on medical conditions with no prior notice of a constitutional

problem.[12]  "This is precisely the kind of micromanagement of local law

enforcement that the Supreme Court has instructed [courts] to avoid."  *Conn v.

Reno*, 591 F.3d 1081, 1087 (9th Cir. 2010) (Kozinski, C.J., dissenting from denial

of rehearing en banc).

> The Court in [*Canton*] was clear that deliberate
> indifference means more than negligence, and that a high
> bar to liability is necessary to forestall "an endless
> exercise of second-guessing municipal employee-training
> programs" -- both because federal judges are "illsuited"
> to such a role and because excessive judicial intervention
> would "implicate serious questions of federalism."

*Id.* (quoting *Canton*, 489 U.S. at 392).

Moreover, precluding this narrow Alcohol Withdrawal theory

comports with the same policy concerns expressed in *Connick* when the Supreme

Court explained that attacking particular "nuances" in training "simply cannot

support an inference of deliberate indifference."  *Connick*, 131 S. Ct. at 1363.

*Connick* made clear that it will not suffice to prove that an injury "could have been

avoided if an employee had had better or more training, sufficient to equip him to

avoid the particular injury-causing conduct."  *Id.*  It did so for the same reason that

Plaintiffs' narrow Alcohol Withdrawal Theory cannot constitute deliberate

---

[12]  Again, the court is analyzing only potential municipal liability under a single-incident theory of deliberate indifference.  Other cases have recognized that training into alcohol withdrawal, in particular, may be necessary, but have analyzed the issue in a "prior pattern" context.  *See, e.g., Stefan v. Olson*, 2011 WL 2621251, at *16 (N.D. Ohio July 5, 2011).

indifference based on a single incident of constitutional injury -- doing so would "provide plaintiffs or courts *carte blanche* to micromanage local governments[.]" *Id.*[13]

A similar case decided a day before *Connick* supports this conclusion. In *Smith v. County of Lenawee*, 2011 WL 1150799 (E.D. Mich. Mar. 28, 2011), the court addressed issues of civil rights violations where an alcoholic, exhibiting signs of alcohol withdrawal, died after a weekend in jail without being seen by medical personnel. Among other issues, the court denied summary judgment as to the county because of (among other deficiencies) improper or nonexistent training as to medical emergencies in general -- not as to a specific lack of training into alcohol withdrawal or delirium tremens -- where the county had prior notice of problems. *Id.* at *25-26. Although not a "single incident" case, *Smith* does indicate that a proper failure-to-train inquiry should not focus specifically on a lack

---

[13] Plaintiffs argue that their Alcohol Withdrawal Theory is based on the proposition that County PSAs received *no* training (formal or informal) on risks, signs, or symptoms of alcohol withdrawal. In that sense, they say they would not be challenging the "particular instructional format" or "nuances" in the quality of training -- challenges that *Connick* discussed as being improper. *Connick*, 131 S. Ct. at 1363. (And if PSAs had received *some*, even ineffective, particular medical training, then the Alcohol Withdrawal Theory would plainly fail under *Connick* as challenging such "nuances" in training.) But, as articulated by Plaintiffs, their narrow Alcohol Withdrawal Theory appears to be subsumed in relevant respects by their broader Monitoring Theory. If PSAs effectively received no training on how to monitor detainees to determine if they needed medical care, then they also did not receive training on monitoring to recognize alcohol withdrawal symptoms. Indeed, failure to train to monitor for alcohol withdrawal could be relevant as an example of failure to train under a Monitoring Theory.

of alcohol withdrawal training.  Indeed, *Smith* reasoned that there is some question

(at least in the Sixth Circuit) whether "unlike general alcohol withdrawal, *delirium*

*tremens*" is a "serious medical condition."  *Id.* at *14.

Accordingly, the court will allow Plaintiffs' Monitoring Theory to

continue, but not Plaintiffs' Alcohol Withdrawal Theory.  The court's July 28,

2010 Order might have allowed the narrower Alcohol Withdrawal Theory to have

been presented to a jury.  *See Wereb*, 727 F. Supp. 2d at 923.  To that extent, the

County's Motion for Reconsideration is GRANTED.

## V.  <u>CONCLUSION</u>

*Connick v. Thompson*, 131 S. Ct. 1350 (2011), requires the court to

scrutinize Plaintiffs' specific theories of municipal liability.  After such scrutiny,

the court GRANTS in PART and DENIES in PART Defendant Maui County's

Motion for Reconsideration.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 10, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Wereb v. Maui County et al.*, Civ. No. 09-00198 JMS-RLP, Order Granting In Part and Denying
In Part Defendant Maui County's Motion for Reconsideration